IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:17-CR-008 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| ADAM CARSON, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

Pursuant to this Court's Criminal Trial Order, Doc. No. 7, the United States of America, by and through its counsel, Justin Herdman, United States Attorney, and Ranya Elzein and Carol Skutnik, Assistant United States Attorneys, respectfully submits the following trial brief regarding evidentiary questions and other legal issues reasonably anticipated to arise at trial.

**I.     Anticipated Evidentiary Issues**

  **A.     The Court Should Allow Witnesses to Testify to their Prior Identifications of Carson**

The Government intends to call a number of witnesses who will testify that before trial, they identified Carson as either the robber of the Chemical Bank or as the individual they perceived in various other contexts.  The Government anticipates possible hearsay objections to

such testimony. These out-of-court identifications are not hearsay, however. Rather, they are admissible as substantive evidence under Federal Rule of Evidence 801(d)(1)(C).

The Federal Rules of Evidence exclude from trial out-of-court statements offered for the truth of the matter asserted, subject to various exceptions. *See* Fed. R. Evid. 802. The Rules define as not hearsay an out-of-court statement "of identification of a person made after perceiving the person" if the declarant "testifies at the trial or hearing and is subject to cross-examination concerning the statement." Fed. R. Evid. 801(d)(1)(C); *United States v. Owens*, 484 U.S. 554, 561 (1988). Under Rule 801(d)(1)(C), prior identifications are therefore admissible as substantive evidence. *United States v. Donovan*, 539 F. App'x 648, 657 (6th Cir. 2013).

The rationale for admitting statements of prior identification as substantive evidence stems from "the generally unsatisfactory and inconclusive nature of courtroom identifications as compared with those made at an earlier time under less suggestive conditions." Fed. R. Evid. 801(d)(1)(C), advisory committee's note (1972); *United States v. Perales*, 534 F. App'x. 502, 507 (6th Cir. 2013) (upholding district court's decision to allow agent to testify to witness's out-of-court identification of the defendant where the witness was subject to cross examination). In other words, an earlier, out-of-court identification that occurred in closer proximity to the alleged commission of the offense is more probative than an in-court identification.

Here the Government intends to call a number of witness who will testify about their prior, out-of-court identifications of Carson. The government expects that each witness will testify that he or she perceived Carson before making the identification, and they will each be subject to cross-examination. Notably, law enforcement was not involved in any of the witness's prior identifications. As such, any claim by Carson that the identifications were made under unduly suggestive conditions would be without merit. Accordingly, pursuant to Rule

801(d)(1)(C), the witness' testimony regarding their out-of-court identifications are not hearsay and are admissible as substantive evidence.

### B. The Court Should Prohibit any Mention of the February 23, 2018 Robbery of the Chemical Bank Branch in Grafton, Ohio

On February 23, 2018, the victim teller in the instant case was the victim of an armed robbery at a different Chemical Bank branch in Grafton, Ohio. The Government does not intend to elicit any testimony regarding the Grafton robbery. Indeed, the Court should find any testimony regarding the Grafton robbery irrelevant pursuant to Federal Rules of Evidence 401 and 402, and in the alternative, unduly prejudicial under Rule 403.

Relevant evidence is generally admissible at trial. Fed. R. Evid. 402. Relevant evidence is defined as that which "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). The fact must also be "of consequence in determining the action." Red. R. Evid. 401(b). Even if evidence is relevant, it be excluded under Rule 403 if "its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury . . . ." Fed. R. Evid. 403; Fed. R. Evid. 402.

Here, any testimony by the victim teller regarding the Grafton robbery is entirely irrelevant to the instant case. The factual circumstances surrounding the two robberies are markedly different. For example, the instant robbery involved a demand note, while the Grafton robbery involved the use of a firearm. Moreover, the robberies occurred over one year apart and at different Chemical Bank branch locations. Finally, an individual with no connection to Carson has been charged in the Grafton robbery. *See United States v. Kroffke*, Case No. 1:18-cr-147. Accordingly, testimony regarding the Grafton robbery has no tendency to make any fact in the instant case more or less probable than it would be without testimony. Moreover, absent any connection between the two robberies, any testimony about the Grafton robbery would not be a

3

fact of consequence in the instant case. In short, the fact that the victim teller in the instant case was the victim of an entirely separate robbery over one year after the charged robbery is in no way relevant to Carson's guilt or innocence.

Any potential argument by Carson that the recent armed robbery of the victim teller bears on her potential bias would be misplaced. Indeed, the victim's statements and identification of the robber occurred before the most recent armed robbery. The Government has advised Carson of the victim teller's statement that the Grafton robbery has in no way affected her recollection of or attitude towards the instant case. To the extent her testimony at trial indicates otherwise, the Court may revisit the issue. At this time, however, there is no indication that the Grafton robbery is in any way relevant to the instant case.

Even if the Court determines the testimony is relevant, the Court should exclude it under Rule 403. Any testimony regarding an entirely differently robbery would confuse and mislead the jury. Carson is on trial for the robbery charged in the instant case. Testimony by the victim teller regarding an entirely different robbery would confuse the issue for the jury and mislead them into thinking that the Grafton robbery had a connection to the robbery charged here. This danger substantially outweighs any probative value of the testimony. Indeed, as explained above, there is no probative value. Accordingly, the Court should prohibit Carson from questioning any witnesses about the Grafton robbery or mentioning it in opening and closing arguments.

### C. The Court Should Permit the Government to Elicit Testimony of Karin Deeb Regarding her Plea Agreement

The Government intends to elicit testimony from witness Karin Deeb regarding her understanding of her own plea agreement. The Government is entitled to elicit from witnesses who have plead guilty the contents of their plea agreements for the purpose of allowing the jury

4

to assess credibility. The Sixth Circuit has held that the government may elicit the contents of a plea agreement from a witness on direct examination in anticipation of potential cross-examination and in order to afford the jury a better opportunity to evaluate the witness's credibility. *See United States v. Townsend*, 796 F.2d 158, 162-63 (6th Cir. 1986); *United States v. Walker*, 871 F.2d 1298, 1303 (6th Cir. 1989). Such testimony is permissible so long as it is not offered as substantive evidence of the defendant's guilt. *Townsend*, 796 F.2d at 162; *Walker*, 871 F.2d at 1303. The Government acknowledges that a plea agreement is not substantive evidence of guilt and that a limiting instruction concerning the use of such testimony would be appropriate, if requested by Carson.

### D. Evidence of Carson's Arrest by Lakewood Police Officers is Admissible

On November 24, 2016, Lakewood Police Officers arrested Carson for receiving stolen property. Specifically, Carson was charged with stealing a car from a BP Gas Station earlier that night after he crashed the car into a police vehicle. Evidence of Carson's theft and arrest is admissible as *res gestae* evidence.

The Sixth Circuit "ha[s] recognized the admissibility of res gestae, or background evidence, in limited circumstances when the evidence includes conduct that is 'inextricably intertwined' with the charged offense." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (internal quotation marks and citation omitted). "Res gestae is sometimes also known as 'intrinsic evidence.' Intrinsic acts are those that are inextricably intertwined with the criminal act charged or a part of the criminal activity as opposed to extrinsic acts, which are those that occurred at different times and under different circumstances from the offense charged." *Id*. (internal quotation marks and citation omitted).

5

"Res gestae evidence does not implicate Federal Rule of Evidence 404(b) . . . ." *Id*. Under Rule 404(b), evidence of "other crimes, wrongs, or acts" is not admissible to prove the character of the defendant. However, it is well settled that Rule 404(b) does not extend to evidence of acts which are "intrinsic" to the charged offense. *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995); *see also United States v. Henderson*, 626 F.3d 326, 338 (6th Cir. 2010) ("Where the challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with evidence of the crime charged, Rule 404(b) is not applicable."). Notably, the Sixth Circuit "allow[s] the trial court to admit evidence regarding a defendant's unindicted criminal activity when that activity is 'intrinsic' or 'inextricably intertwined' with charges named in the indictment." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (internal quotation marks and citation omitted).

> According to the Sixth Circuit,
>
> Background or res gestae evidence consists of those other acts that are inextricably intertwined with the charged offense or those acts the telling of which is necessary to complete the story of the charged offense . . . . Proper background evidence [has] a causal, temporary or spatial connection with the charged offense, typically such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness' testimony or completes the story of the charged offense.

*United States v. Till*, 434 F.3d 880, 884 (6th Cir. 2006) (citing *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)); *United States v. Daulton*, 266 F. App'x 381, 384 (6th Cir. 2008) (other acts evidence is "intrinsic" when the other acts "were necessary preliminaries to the crime charged"). Indeed, "[t]he jury is entitled to know the setting of a case. It cannot be expected to make its decision in a void - without knowledge of the time, place[,] and circumstances of the acts which form the basis of the charge." *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977).

6

Once other acts evidence is deemed "intrinsic," the court determines whether the evidence satisfies the balancing test of Federal Rule of Evidence 403.  *See Hardy*, 228 F.3d at 750; Fed. R. Evid. 403.

Here, Carson's theft of the car from BP and his subsequent arrest is inextricably intertwined as an integral part of the immediate context of the robbery.  The Government believes the evidence will show the following.  The robbery occurred on November 21, 2016.  Carson and Deeb spent that night and the following night at the Holiday Inn Express in downtown Cleveland, where police and security had to assist in their removal from the premises.  In doing so, an officer captured the proceeds from the bank robbery on his body camera video.  Carson and Deeb spent the next night, the night of November 23, 2016, at the Motel 6 in Middleburgh Heights.  In the early morning hours of November 24, 2016, Deeb took her belongings and some of the robbery proceeds and left Carson at the motel without a car.  Carson left the motel on his own around noon that day, taking his belongings with him.  Those belongings included a khaki/green messenger bag.  Carson walked to a BP station in Olmsted Falls.  Carson stole a car from that BP, and within hours, crashed it into a Lakewood police car.  Lakewood police arrested and booked Carson that night.  Carson's arrest and booking led to his identification as the robbery suspect.  Moreover, his messenger bag was found in the stolen car.  That bag contained, among other evidence, clothing matching that which the robber wore.  Evidence of these acts is therefore necessary to complete the story of Carson's involvement in the robbery.  Indeed, the Government could not explain how it obtained key evidence and how that evidence ties to Carson without explaining the circumstances of his theft and arrest.  Carson's actions are all part of the same criminal episode, all of which occurred over a period of

7

approximately one week. As such, information regarding his theft and arrest are admissible as *res gestae* evidence.

### E. Carson's Drug Use is Admissible as Res Gestae Evidence

Carson's drug use before, during, and in the week after the robbery is also admissible as *res getsae* evidence. Indeed, the government will present evidence that his drug use was part of the motive for the robbery and that it contributed to his subsequent actions, which, as explained above, are intrinsic to the crime charged.

### F. The Jury Should Not be Informed of the Consequences of its Verdict

If convicted in this case, Carson faces a possible term of imprisonment and fine. If Carson proceeds *pro se*, he may endeavor to educate the jury on the potential ramifications of a guilty verdict in this case with the hope of obtaining jury nullification. The Sixth Circuit has firmly rejected such a strategy: "[U]nless juries have roles in sentencing, such as in capital sentencing proceedings, juries should be instructed not to consider defendants' possible sentences during deliberation." *United States v. Chesney*, 86 F.3d 564, 574 (6th Cir. 1996); s*ee also United States v. Stotts*, 176 F.3d 880, 886 (6th Cir. 1999) ("the Supreme Court has held that juries should be instructed not to consider a defendant's possible sentence unless the jury has a specific role in sentencing"). Accordingly, Carson should not be permitted to distract and confuse the jury by inviting the jury to decide the issue of guilt with the knowledge of this Court's sentencing options or the applicable guidelines range.

Defendants often infuse sentencing into the trial under the guise of cross-examining a cooperating witness. For example, a defendant may ask the witness about the maximum penalty for the charged offense, may compare a cooperator's plea agreement to the defendant's status, or

use the cooperator to contrast a defendant's perceived situation, i.e., "You pleaded guilty because you didn't want a trial to bankrupt you, cause family strain, etc."

The Government moves this Court, *in limine*, to prohibit Carson from eliciting any testimony or making any argument that may directly or indirectly inform the jury of sentencing options or endeavor to engender sympathy for Carson. In so moving, the Government is not seeking to prohibit Carson from questioning a cooperating witness about potential bias from her plea agreement. The Government is, however, asking the Court to direct counsel or Carson to conduct such examination so as to truly question about bias and not merely inform the jury of the potential sentence Carson faces.

**II.     Legal Issues**

    **A.     Sequestration of Witnesses**

The United States respectfully requests that the Court issue a witness-sequestration order pursuant to Federal Rule of Evidence 615.

    **B.     The Court Should Permit Two Case Agents to Remain in the Courtroom During Trial**

The Government moves this Court, *in limine*, to permit two case agents to remain in the courtroom during trial. The Government anticipates the Court entering a separation of witnesses' order pursuant to Federal Rule of Evidence 615. The Government requests the Court to permit two potential witnesses to remain in the courtroom throughout the trial to assist the Government at counsel table.

Federal Rule of Evidence 615(2) specifically excludes from the sequestration order "an officer or employee of a party which is not a natural person designated as its representative by its attorney." The Government anticipates designating FBI Special Agent Kelly Liberti as the Government's representative present at counsel table.

9

In addition to requesting Special Agent Liberti's presence at trial, the Government requests the Court permit Amherst Police Department Detective Zachary Horning, who conducted the investigation jointly with Special Agent Liberti, to assist at counsel table. The Government anticipates several documentary exhibits, in addition to demonstrative exhibits and extensive electronic evidence. In order to organize, maintain, and track the evidence and to present the evidence in a coherent and efficient manner, the Government is requesting a second case agent.

Federal Rule of Evidence 615(3) provides an additional exception to the Court's sequestration order for witnesses "whose presence is shown by a party to be essential to the presentation of the party's cause." *See United States v. Mohney*, 949 F.2d 1397, 1404–05 (6th Cir. 1991). The Rule, therefore, allows the Government to designate representatives in addition to the case agent for certain prosecutions that are sufficiently complex so that "the aid of more than one law enforcement officer is needed to sort through extensive, technical evidence, and to help 'map out strategy.'" *See United States v. Phibbs*, 999 F.2d 1053, 1072 (6th Cir. 1993). "The 'essential' witness exception set out in Rule 615(3) 'contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation.'" *Id.* at 1073 (quoting Advisory Committee Notes to Fed. R. Evid. 615). Detective Horning falls squarely within this exception, and the Government requests he be permitted to sit at counsel table throughout the trial.

**III.    Conclusion**

The United States is prepared to submit additional briefing on any issue should the Court or circumstances require.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/ Ranya Elzein
Ranya Elzein (OH: 0090887)
Carol M. Skutnik (OH: 0059704)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3929/3785
(216) 522-8355 (facsimile)
Ranya.Elzein@usdoj.gov
Carol.Skutnik@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April 2018, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Ranya Elzein
Ranya Elzein
Assistant U.S. Attorney