UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADAM CARSON, | ) | CASE NO. 1:17 CR 00008 |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | MEMORANDUM OPINION AND ORDER |
| Respondent. | ) | |

This matter comes before the Court upon Adam Carson's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence in accordance with Title 28 U.S.C. § 2255. (ECF #167). The petitioner raises three central grounds: (1) ineffective assistance of counsel; (2) a violation of his 5th Amendment right to testify; and, (3) that the special conditions imposed on his supervised release are unconstitutional. The Government filed a Response in Opposition and Petitioner filed a reply. (ECF #176, 180). This matter is now fully briefed and ready for disposition. For the reasons set forth herein, the petition (ECF #167) is DENIED. Petitioner's subsequent Motion for Expansion of the Record (ECF #182) is therefore denied as moot.

**Factual and Procedural History**

On November 21, 2016, Mr. Carson and his then-girlfriend Karin Deeb robbed a Chemical Bank in Amherst, Ohio to obtain funds for their drug use. Carson wore a disguise during the robbery and Deeb participated as the getaway driver, after which they purchased drugs and stayed in a hotel. They were evicted from their hotel after one night and rented a room in a different hotel where they continued to use drugs. After having an argument, Deeb left

1

Carson in the hotel, taking with her the remainder of the robbery proceeds. Carson was arrested the next day after stealing and crashing a car. In the stolen car police found items related to the robbery, which were later admitted as evidence in this case.

Petitioner was indicted on January 5, 2017 under 18 U.S.C. § 2113(a) for robbing Chemical Bank. The Government filed a superseding indictment to add a charge for witness tampering under 18 U.S.C. § 1512(b)(1) when it was discovered that Carson sent Deeb a threatening letter from jail, attempting to influence her upcoming testimony. (ECF #15). A jury convicted him of both charges. (ECF #88, 89). Mr. Carson was sentenced to 240 months in prison with restitution due to Chemical Bank in the amount of $5,590.00. (ECF #107). The United States Court of Appeals for the Sixth Circuit affirmed the trial court's judgment on appeal. (ECF #145). Mr. Carson then filed a petition for certiorari in the U.S. Supreme Court, which was denied. (ECF #149).

Subsequently, on October 12, 2021, Petitioner filed the instant Motion to Vacate under 28 U.S.C. § 2255 alleging ineffective assistance of counsel, a violation of his 5th amendment right to testify, and unconstitutional special conditions imposed on his supervised release. (ECF # 167). Petitioner also filed a Supplemental Motion for an Evidentiary Hearing on § 2255. (ECF #181).

## **Standards for Relief**

A petitioner that moves to vacate, set aside or correct a sentence pursuant to 28 U.S.C. §2255 must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or, (4) it is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424, 426-27 (1962). As such, a court may grant relief under § 2255 only if a petitioner has demonstrated "a fundamental

2

defect which inherently results in a complete miscarriage of justice." *Id.* (internal quotation and citation omitted); *see also, United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Thus, Mr. Carson must prove his constitutional rights were denied or infringed by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). If a § 2255 motion, as well as the files and records of the case, conclusively show that the petitioner is entitled to no relief, then the court need not grant a hearing on the motion. *See* 28 U.S.C. § 2255; *see also Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (recognizing that evidentiary hearing is not required when the record conclusively shows that petitioner is not entitled to relief).

## Analysis

### I. Ineffective Assistance of Counsel

Petitioner's claims of ineffective assistance of counsel are numerous and will be discussed in turn. For Mr. Carson to prevail on an ineffective assistance of counsel claim, he must show that his counsel's performance was deficient, and that the deficient performance prejudiced his result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient when it falls below an objective standard of reasonableness, and their errors are so serious that he or she was not functioning as the "counsel" guaranteed by the 6th Amendment. *Id.* at 686-88. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Judicial scrutiny of counsel's performance must be "highly deferential," as defense counsel's competence is presumed. *Id.* at 689; *Kimmelman v. Morrison*, 477 U.S. 365, 384

3

(1986). These standards apply equally to ineffective assistance claims against appellate counsel. *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

1. <u>Failure to hire a private investigator and obtain experts to testify</u>

Mr. Carson alleges that his counsel, Mr. Butler, failed to obtain a private investigator. Mr. Carson argues that a private investigator could have: (1) interviewed bank tellers to prove that witness Mylissa Johnson's identification of Mr. Carson through a Facebook post never occurred; (2) obtained impeachment evidence against witnesses; and, (3) obtained complaints that Mr. Carson filed against the Rocky River Police Department. A petitioner must prove, not simply allege, that their attorney's actions were unreasonable and constituted unsound strategy. *Kimmelman*, 477 U.S. at 381. Mr. Carson's claims about what information could have been discovered are speculative and he provides no evidence to show the existence of information, which if discovered, could have aided his defense. Therefore, this Court finds that Petitioner cannot prove that Mr. Butler's actions fell below an objective standard of reasonableness or in any way prejudiced his results.

Mr. Carson also alleges that Mr. Butler failed to hire a forensic expert, a computer expert, and a facial identification expert. Generally, a lawyer's decision to not hire an expert is considered trial strategy and cannot form the basis of an ineffective assistance of counsel claim. *See e.g.*, *State v. Boaston*, 2021 Ohio App. Lexis 352, *29-30 (Ohio Ct. App. 2021); *In re B.C.S.*, 2008 Ohio App. Lexis 4843, *14 (Ohio Ct. App. 2008) (noting that deference to trial strategy is important because a lawyer may determine that such an expert may uncover evidence that is more harmful to the defendant). Petitioner argues that: (1) a forensic expert could have testified regarding the lack of DNA evidence at the crime scene and analyzed the bank video to compare the shirt of the robber to the one submitted as evidence on this case; (2) a computer expert could

have testified about access to Facebook profiles to prove that the bank teller, Mylissa Johnson, was lying in her testimony about identifying Mr. Carson through Facebook; and, (3) a facial identification expert could have testified that Mr. Carson was not the person in the bank robbing surveillance video. Mr. Carson's claims about a forensic expert are speculative and do not articulate how Mr. Butler's performance fell below an objective standard of reasonableness. In fact, Mr. Butler may have reasonably concluded that a forensic expert would have been useless, given that the bank robber wore gloves and that Detective Horning was unable to collect fingerprints and DNA from the crime scene. Similarly, Mr. Carson merely speculates that a computer expert could aid his defense and falsely claims that no one should have been able to access his information if they weren't accepted followers of his page. However, investigators were easily able to locate his Facebook information and preserve it as an exhibit. Mr. Butler's performance is not deficient for failing to pursue unfounded claims.

In addition, contrary to Mr. Carson's claim regarding a facial identification expert, the record establishes that Mr. Butler thoroughly pursued this option. Mr. Butler requested, and was granted, funds from the Court to retain an expert witness in identification. (ECF #55). It is reasonable to conclude that after pursing this expert Mr. Butler decided it would not aid his defense. Likewise, it is reasonable to conclude that this expert may have been unable to testify about suspect identification because the bank robber was wearing a disguise, including a hat, a mustache, and oversized clothing. Mr. Butler, instead, vigorously cross-examined witnesses identifying Mr. Carson as the robber and objected to the prior identification of Mr. Carson through Facebook. And, the decision to rely on cross-examination rather than an expert witness is "precisely the sort of tactical judgment [that] Strickland [is] against second second-guessing." *Esparza v. Sheldon*, 765 F.3d 615, 624 (6th Cir. 2014).

5

As such, this Court finds that Mr. Butler's decision to not call these experts and to instead rely on cross-examination of the Government's witnesses was well within the realm of reasonable trial strategy and does not establish ineffective assistance of counsel. Even if counsel's performance was deficient, Mr. Carson cannot show that it prejudiced his result because the jury was shown the bank robbery surveillance video and could come to their own conclusions about whether the person in the footage, accounting for all the other evidence presented, was in fact Mr. Carson.

2. Failure to file motions to suppress

Mr. Carson also alleges that his attorney, Mr. Butler, failed to file motions to suppress the shirt, gloves, and security camera footage from Holiday Inn which were used as evidence against him in trial. These items were all lawfully seized: the shirt was in the vehicle he stole when it was impounded, the gloves were on Mr. Carson's person at the time of arrest, and Holiday Inn owned and supplied the camera footage. Objections to their admissibility are therefore frivolous. As such, Mr. Carson cannot show that Mr. Butler's performance was deficient. Counsel is not required to raise meritless claims to avoid a claim of ineffective assistance of counsel. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998).

3. Failure to present defense witnesses

Mr. Carson alleges that Mr. Butler was ineffective for failing to call defense witnesses to impeach the testimony of Mylissa Johnson and Karin Deeb. A lawyer's decision to call a witness is considered one of strategy and not subject to review. *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). Failing to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense. *Chegwidden v. Kapture*, 92 Fed.Appx.

6

309, 311 (6th Cir. 2003). Mr. Carson vaguely claims that defense witnesses could discredit Johnson and Deeb. He offers no evidence to suggest that any proposed witness would have provided a novel or substantial defense. Further, Mr. Butler extensively cross-examined witnesses, such as Ms. Johnson and Ms. Deeb, and questioned their credibility throughout the trial proceedings. Therefore, he cannot show that his counsel's performance was deficient or that the lack of defense witnesses prejudiced his result.

4. <u>Failure to accept the Government's plea deal</u>

Mr. Carson argues that Mr. Butler failed to accept a plea agreement on his behalf. The record does not support this claim. In fact, the Government states that the plea agreement Mr. Carson admonishes his attorney for not accepting never even existed. (ECF #176, PageID #1829). Mr. Butler's sworn affidavit states that Mr. Carson never wanted to plead guilty to the Bank Robbery, but the Government would only accept a plea that included this count. (ECF #176, Exhibit 4). Additionally, the Government stated at a pre-trial hearing that "there have been no discussions with Mr. Carson that involved reducing or dismissing his charges in any way." (ECF #139). Further, Mr. Carson repeated to the Court several times that he did not want to plead guilty to anything. *Id.* As such, Mr. Carson cannot show that Mr. Butler's performance was deficient for failing to accept a plea that did not exist. Even if a plea did exist, it is clear from the record that Mr. Carson had no desire to accept it, and counsel is not ineffective for proceeding to trial at the request of the defendant.

5. <u>Failure to object to parole officer testimony</u>

Mr. Carson alleges that Mr. Butler was ineffective in failing to object to the testimony of his parole officer, Officer Worchol. He argues that his parole officer's testimony was prejudicial and

7

brought in inadmissible information regarding his prior convictions. This claim was raised on direct appeal and was decided against Mr. Carson. *See United States v. Carson*, 796 Fed.Appx. 238 (6th Cir. 2019). Mr. Carson cannot relitigate an issue already raised on appeal unless "highly exceptional circumstances" exist, "such as an intervening change in the law." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *Ford v. United States*, 36 F.3d 1097 (6th Cir. 1994). Mr. Carson does not allege any such exceptional circumstances or changes. Even if Mr. Carson had not already litigated this on direct appeal, his claim would fail because Officer Worchol testified exclusively in the capacity of a state agency employee and never mentioned Mr. Carson's probation or prior convictions, thereby not violating Fed. R. Evid. 609. In addition, this Court finds that Mr. Mr. Butler's performance was not ineffective on these grounds because Mr. Carson cannot show he was prejudiced by his counsel's decision not to object to this testimony at trial.

6. <u>Failure to object to prosecutor's "improper remarks"</u>

Mr. Carson argues that Mr. Butler's performance was ineffective for failing to object to prosecutor's comments about Mr. Carson's drug use and to prosecutor's question regarding Mr. Carson's friend's body in the back of his van after an overdose. Experienced counsel knows that the overuse of objections can be detrimental to their client. *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). As such, "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state… [or] that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *Id.* Mr. Carson has not shown that the prosecutor's statements were so prejudicial that Mr. Butler's failure to object to them defaulted his case to the state. The drug comments Mr. Carson references are questions posed by the

prosecutor during cross-examination of Mr. Carson's mother, who testified at length about Mr. Carson's drug use. (ECF #102, PageID 1255-58). Had the prosecutor not presented questions on cross-examination about Mr. Carson's drug use, the jury would still have heard direct testimony from Mr. Carson's mother about the same subject matter. Likewise, the prosecutor's question regarding the overdosed body of Mr. Carson's friend related to a stolen HVAC unit and was proper impeachment to discredit information Mr. Carson's mother provided in her direct testimony. Therefore, this Court finds that Mr. Carson cannot show that counsel's failure to object was in error or that it prejudiced the outcome of his trial.

7. <u>Counsel's opening and closing statements to the jury were "prejudicial"</u>

Mr. Carson argues that Mr. Butler's performance was ineffective because his opening and closing statements contained "prejudicial" statements that painted him in an unfavorable light to the jury. Mr. Carson takes issue with his counsel's admission during opening statements that Mr. Carson used drugs and stole a car. Mr. Carson also takes issue with Mr. Butler telling the jury during closing statements that Mr. Carson is just over five feet tall and that the robber was between 5'6" and 5'7," as well as being unable to show certain pictures to the jury. The way an attorney presents their case in arguments is a matter of trial strategy and does not constitute ineffective assistance. *Johnson v. Bobby*, 2021 U.S. Dist. LEXIS 246902, *387-88 (S.D. Ohio 2021) (holding that counsel's efforts to build rapport with the jury, even if poorly executed, were well within reasonable professional assistance); *see also Moss v. Hofbauer*, 286 F.3d 851, 863 (6th Cir. 2002). It is well within reason that Mr. Butler made these admissions during his statements in an effort to build rapport with the jury and provide merit to his defense theory. Attempting to deny all involvement with drugs or the stolen vehicle, in the face of abundant evidence presented at trial, could have caused defense counsel to lose all credibility in his

9

argument. Instead, Mr. Butler argued that even though his client was involved in those things, he was not the one that robbed the bank. This Court finds that Mr. Butler's performance was not ineffective on these grounds because Mr. Carson cannot show that his statements fall outside the realm of reasonable trial strategy.

8. Failure to adequately cross-examine witnesses

Mr. Carson next alleges that Mr. Butler's performance constitutes ineffective assistance of counsel for failing to cross-examine the Government's witnesses in the way that Mr. Carson saw fit and for failing to object to statements made by witnesses that connected him to the bank robbery. Many of Mr. Carson's various grievances here have been addressed separately in other parts of this motion, such as the mentioning of his history of drug use, the questioning of his parole officer, the lack of DNA evidence available at the crime scene, the accessibility of his Facebook page, and the credibility of key witnesses. For the reasons previously stated, Mr. Butler's performance relative to these issues was not deficient.

The central premise of Mr. Carson's dissatisfaction with Mr. Butler's other cross-examinations is that he failed to ask questions that Mr. Carson believed would highlight inconsistencies in witness testimony or show how certain connections being made were implausible. However, in weighing a witness's credibility, a lawyer's decision regarding the extent to which they should cross-examine them is "virtually unchallengeable." *Moss*, 286 F.3d at 864. Mr. Carson does not allege that Mr. Butler entirely failed to cross-examine witnesses; instead, Mr. Carson argues that Mr. Butler should have done things differently when he was cross-examining them. Courts are highly deferential to the trial strategy of lawyers, and Mr. Carson cannot establish ineffective assistance of counsel by simply disagreeing with Mr. Butler's

10

tactical choices. *Strickland,* 466 U.S. at 689; *Kimmelman,* 477 U.S. at 384; see also *Lundgren,* 440 F.3d at 774.

Further, Mr. Carson cannot show how any of his suggested questions would have positively impacted the outcome of his trial. In fact, many of his suggestions would have opened the door to the admission of his prior criminal conduct and other unfavorable evidence. (ECF #176, PageID 1832, 1836). This Court finds that Mr. Butler's line of questioning during cross-examinations and his decisions on when to object were matters of trial strategy and exercised in a manner that benefitted Mr. Carson. They do not establish ineffective assistance of counsel.

9. <u>Failure to effectively argue at sentencing</u>

Mr. Carson also argues that Mr. Butler was "constitutionally ineffective at sentencing" for failing to raise viable arguments for a downward variance in the guidelines "in regards to [his] drug abuse and mental and emotional conditions." This is directly contradicted by the record. The record clearly establishes that Mr. Butler made objections to the presentence report at sentencing and argued for a lesser sentence using the factors in 18 U.S.C. § 3553 (*c*). (ECF #131, PageID 1508-18). Mr. Butler discussed Mr. Carson's drug use, mental health issues, and upstanding education and employment history. *Id.* As such, this Court finds Mr. Carson's claims to be without merit.

10. <u>Appellate counsel's failure to write an adequate brief</u>

Finally, Mr. Carson argues that his appellate counsel was ineffective for: (1) submitting an inadequate, underdeveloped appellate brief; (2) failing to respond to "several mistruths, lies, and erroneous facts" in the Government's brief; and, (3) failing to bring up the disparity of his sentence in relation to Karin Deeb's sentence. Claim two (2) is unfounded, as Mr. Carson fails to

11

point to specific "lies" in the Government's brief, provide evidence refuting the Government's claim, or demonstrate how he was prejudiced by these hypothetical "mistruths." Claim three (3) also lacks merit, as Mr. Carson's sentence was imposed based on his own offense level and criminal history category and Ms. Deeb's sentence has no bearing on those factors. Appellate counsel is not ineffective for failing to argue about a disparity in sentence between Mr. Carson, who was convicted of robbery and witness tampering, and Ms. Deeb, whose charges and sentencing factors were not comparable.

It is true, however, that the 6th Circuit did not consider Mr. Carson's argument on appeal that certain testimony violated Fed. R. Evid. 404(b), because his appellate counsel's brief was underdeveloped. *United States v. Carson*, 796 F.Appx. 238, 249 (6th Cir. 2019). However, to succeed on an ineffective assistance of counsel claim, Mr. Carson must also establish that the allegedly deficient performance prejudiced his result. *Strickland*, 466 U.S. at 687-88 (finding prejudice when "but for counsel's unprofessional errors, the result of the proceeding would have been different"). Mr. Carson cannot show that but-for his attorney's underdeveloped brief he would have received a different outcome on appeal. Mr. Carson argues that the admission of various witnesses' testimony violated Fed. R. Evid. 404(b). However, this testimony was admissible as res gestae evidence and thus not barred by 404(b).[1] As such, it was properly admitted and any argument to the contrary would have been unsuccessful. Therefore, Mr. Carson has failed to establish that his attorney's allegedly deficient performance prejudiced his result.

---

[1] Res gestae evidence, or background evidence, is admissible when it includes conduct that is inextricable intertwined with the offense that is charged and it does not implicate Fed. R. Evid. 404(b). *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015).

## II. Violation of Fifth Amendment Right to Testify

Petitioner alleges that he was unconstitutionally denied the right to testify on his own behalf. The right to testify at trial is a "constitutional right of fundamental dimension" that is, ultimately, the defendant's decision to make. *United States v. Webber*, 208 F.3d 545, 550-51 (6th Cir. 2000) (citing *Rock v. Arkansas*, 483 U.S. 44, 52 (1987)). Here, the record contradicts Mr. Carson's claim that repeated requests to testify were ignored. The sworn affidavit of Petitioner's attorney indicates that Mr. Carson did not initially express a desire to testify at trial and that he did not attempt to prevent Mr. Carson from testifying. (ECF #176, Exhibit 4). Once Mr. Carson did verbalize a desire to testify near the adjournment of trial on a Friday evening, his counsel notified the Court of Mr. Carson's wish and recommended that his client think about it over the weekend. (ECF #103, PageID 1323-24). When trial reconvened on Monday morning, counsel informed the Court that Mr. Carson no longer wanted to testify, but that he wanted to recite his own closing arguments instead. *Id.* The Court denied this request for "hybrid" representation.

In the instant motion, Mr. Carson expresses dissatisfaction that, following counsel's recommendation that he think about his request to testify over the weekend, his attorney failed to "[go] down to the jail … to prepare him to testify." (ECF #167, PageID 1754). This is not sufficient to show a constitutional violation. First, there is no indication that, following the advisement to "think about it," Mr. Carson notified his attorney that he further contemplated his options and still desired to testify. Second, even if Mr. Carson had told his attorney over the weekend that he still wanted to testify, his attorney may have advised him that this could subject him to damaging cross-examination and be detrimental to his case. When an attorney makes a tactical decision to not have the defendant testify, the defendant's assent is presumed unless affirmatively disavowed. *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993). If a defendant

13

desires to testify against the advice of his counsel, he must affirmatively notify the court of this wish. *Webber*, 208 F.3d at 551.

Mr. Carson was present in Court when counsel told the Court that Mr. Carson wanted to give a closing argument instead of testifying. Mr. Carson never contradicted this statement, nor did he otherwise affirmatively notify the Court that he wanted to testify against the advisement of his attorney. Barring affirmative notification to the court regarding direct disagreement with counsel's decision, the court is not required to address a silent defendant or inquire whether they intentionally waived this right to testify. *Joelson*, 7 F.3d at 177. As such, this Court finds that, in the absence of affirmative notification to the Court, Petitioner waived his right to testify and that assent to his counsel's tactical strategy is presumed.

### III. Unconstitutional Special Conditions Imposed on Supervised Release

Finally, Petitioner alleges that the Court failed to adequately state its rationale for his special conditions of supervised release. At sentencing, courts are required to state, in open court, their rationale for imposing special conditions of supervised release. 18 U.S.C § 3553 (*c*); *United States v. Berridge*, 74 F.3d 113, 118-19 (6th Cir. 1996). Special conditions are considered appropriate when they are reasonably related to goals of probation, such as rehabilitation and protection of the public, and involve deprivation of liberty no greater than what is necessary to accomplish those goals. *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997). The special conditions in this case include drug testing and substance abuse treatment; mental health evaluation and cognitive behavioral therapy; a requirement to take prescribed mental health medications; a restriction on guns and alcohol; and, various financial restrictions and monitoring. (ECF #107).

14

Mr. Carson does not claim that the conditions of his supervised release are unrelated to the goals of his probation, nor does he take issue with any specific condition. Mr. Carson's only allegation is that the Court failed to explicitly state its reasons for imposing these special conditions. The record does not support this claim. Prior to enumerating the conditions of supervised release, the Court gave a lengthy explanation of the factors it was considering and why it felt its sentencing and conditions were appropriate. (ECF #131, pg. 29-36). Specifically, the Court reviewed a forensic evaluation which discussed Mr. Carson's drug addiction and psychiatric disorders, recommended that he receive therapy, and indicated that he is prone to impulsive and destructive behavior. (ECF #131, pg. 29-30). The Defendant himself even asked for drug treatment and mental health counseling, saying he needed help (ECF #131 pg. 22) and has "never committed a crime sober." (ECF #131, pg. 19).

Furthermore, even if the Court failed to explicitly link its rationale to the special conditions, this would be harmless error. The Sixth Circuit has "repeatedly held that 'a sentencing court's failure to expressly explain its reasons for exacting a particular special condition of supervised release will be deemed harmless error if the supporting reasons are evident on the overall record, and the subject special condition is related to the dual major purposes of probation, namely rehabilitation of the offender and enhancement of public safety.'" *United States v. Brogdon*, 503 F.3d 555, 564 (6th Cir. 2007) (quoting *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001)). The overall record clearly documents Mr. Carson's extensive history of drug abuse, mental health problems, and robbing banks. It is, therefore, readily apparent how the drug treatment and testing, behavioral therapy, and financial restrictions are related to the goals of rehabilitation and public safety. This Court finds that imposing such conditions is not unconstitutional.

**Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition. 28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.

For the reasons stated above, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court declines to issue a certificate of appealability. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that

16

an appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

## Conclusion

For the reasons set forth above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence In Accordance With Title 28 U.S.C. § 2255 (ECF #167) is DENIED. This Court finds that Petitioner's counsel did not give ineffective assistance, Petitioner's fifth amendment right to testify was not violated, and Petitioner's special conditions were not improperly imposed at sentencing.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
Senior United States District Judge

DATED: March 22, 2022