UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:17 CR 008 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |
| ADAM CARSON, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF # 223). The Court appointed counsel to assist Mr. Carson with his petition and counsel filed a Supplement to Pro Se Motion To Reduce Sentence Pursuant to 18 U.S.C. §3582(c)(1)(A)(I). (ECF #226). The government filed a Response in Opposition to the motion, and Mr. Carson's counsel filed a Reply on his behalf. (ECF #236, 240).

Under the terms of the First Step Act, 18 U.S.C. §3582(c)(1)(A), an inmate may file a request with the court to modify an imposed term of imprisonment for "extraordinary and compelling reasons." Prior to taking such action, however, the inmate is required to request that the Director of the Bureau of Prisons ("BOP") file a motion on his behalf, and to "fully exhaust[] all administrative rights to appeal a failure of the BOP to bring a motion." *Id.* Administrative rights are exhausted when the warden refuses to recommend that the BOP file a compassionate release motion with the court, and the prisoner appeals the denial using the BOP's Administrative Remedy program, or if there has been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Program Statement 1330.18; 28 C.F.R. 542(B), The Sixth Circuit has interpreted this to mean that the exhaustion requirement is satisfied

thirty days after a warden receives a request by an inmate, regardless of whether any administrative appeals are available or have been pursued. *See, United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). The exhaustion requirement is "mandatory" if invoked by the government and is not subject to any "judge-made exceptions." *Alam*, 960 F.3d at 834. There are no equitable exceptions "to account for irreparable harm or futility," including in cases involving COVID-19. *Id.* at 835-36; *USA v. Minor*, Case No. 20-3467, at 3 (6th Cir. March 2, 2021). Mr. Carson filed a request for compassionate release that was received by the Warden on January 5, 2024. It has been more than 30 days since his request was filed. Therefore, the government does not contest that Mr. Carson has exhausted his administrative requirements as defined by Sixth Circuit precedent. His motion is, therefore, properly before the Court.

In deciding Mr. Carson's motion, the Court must apply the November 2023 amendments to the Sentencing Commission's policy statement addressing the criteria for determining what constitutes extraordinary and compelling reasons for relief under 18 U.S.C. §3582(c)(1)(A).[1]

---

[1] Pursuant to U.S.S.G. §1B1.11(a), (b)(1), Courts should apply the Guidelines manual in effect on the date that the defendant is sentenced, unless doing so would violate the *ex post facto* clause of the United States Constitution. When considering a motion for compassionate release, courts have generally read this policy statement to mean that courts should apply the version of the Sentencing Guidelines that is in place at the time the motion is decided. *United States v. Thompson*, 2024 U.S. Dist. LEXIS 65932 (N. Mex. D. Ct., April 10, 2024)(citing U.S.S.G. §1B1.1 fn. 9, held courts should use Guidelines manual in effect on the date a motion for compassionate release is decided); *United States v. Arcila*, 2024 U.S. Dist. LEXIS 24825 (Oregon Dist. Ct., February 12, 2024)(applying Guidelines in effect at the time the motion for compassionate release was decided, although motions were filed before amendments took effect)(*citing* district courts from S.D. California, Montana, and Utah); *United States v. Cirino*, 2024 U.S. Dist. LEXIS 68951 (Nev. Dist. Ct., April 15, 2024)(applying Guidelines in effect when compassionate release motion was decided); U.S.S.G. §1B1.10, fn. 9 (when reducing sentence under 18 U.S.C. §3582(c)(2), courts should use Guidelines manual in effect at the time the court reduces sentence); *cf., United States v. Valenzuela*, 2023 U.S. Dist. LEXIS 136174(Idaho Dist. Ct., Aug. 3, 2023) (citing §1B1.11(a) to support application of Guidelines policy statement in effect when the motion was decided.); *but see, Lovelace v. United States*, 2023 U.S. Dist. LEXIS 230249 (S.C. Dist. Ct., Dec. 28, 2023)(applied Guidelines in effect at the time the motion and response were filed, even though they were amended before the court issued its decision); *United States v. Curtin*, 2023 U.S. Dist. LEXIS 212727, *5 (MD Dist. Ct., Nov. 27, 2023)(applying Guidelines manual in effect when motion was filed); *United States v. Perez*, 2024 U.S. Dist. LEXIS 42651 (N.C. Mid. Dist. Ct., March 8, 2024)(applying Guidelines manual in effect when motion was filed).

Under the 2023 Amendments, the Court may reduce a defendant's term of imprisonment if, after considering the factors set forth in 18 U.S.C. §3553(a), to the extent they are applicable, it determines three things: (1) that extraordinary and compelling reasons warrant a sentence reduction; (2) that a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and, (3) that the defendant is not a danger to the safety of any other person or to the community. U.S.S.G. §1B1.13(a)(1)(A), (2),(3). A "compassionate release decision is discretionary, not mandatory." *Jones* at 9; *cf. United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010).

In November of 2023, the Sentencing Commission revised its policy statement addressing the circumstances that should be considered "extraordinary and compelling reasons" for a sentence reduction under 18 U.S.C. §3553(a). The revisions expanded the potential for relief based on a defendant's medical condition to include medical conditions that require "long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. §1B1.13(b)(1)(c). Mr. Carson argues that he suffers from medical conditions that are not being properly treated by the BOP and without proper care, he is suffering causing serious deterioration in his health. Specifically, Mr. Carson cites a herniated disc in his back, and severe dental disease.

Mr. Carson admits that he has been evaluated by two orthopedic physicians to address back pain caused by his herniated disc. He contends, however, that the BOP has failed to provide prescribed medication for the pain caused by this condition, and that they have failed to transport him to the surgeon(s) office(s) for injections that were recommended by these diagnosing physicians. The full record shows that the BOP has been monitoring Mr. Carson's condition, and providing continued, reasonable treatment for Mr. Carson's back pain.

---

There is no evidence to suggest that the BOP is withholding necessary or appropriate medical treatment, or that a lack of treatment puts him at risk of serious deterioration in his health. Mr. Carson was provided with an MRI to diagnose his back pain and was seen by pain specialists including an Interventional Pain Physician at UPMC Susquehanna. (ECF #236, Ex. A at 32-47). That physician concluded Mr. Carson's pain was "multifactoral" and recommended he receive a steroid injection. The physician also recommended that Mr. Carson talk to his "primary provider" to see if gabapentin would be an appropriate prescription for pain management. (*Id.* at 28-31). The BOP later took Mr. Carson to receive the recommended steroid injection. (*Id.* at 28-31).

Mr. Carson was also seen repeatedly by a BOP physician, who agreed with the Inverventional Pain Physician, that the reported pain was "multifactoral," suggesting that is caused by multiple factors or that it has multiple triggers. The BOP physician explained that gabapentin is a drug that is "reserved for those individuals with confirmed neuropathic pain," and that Mr. Carson did not have that diagnosis, but rather appeared to have "nebulous" pain not clearly triggered by his herniated disc or other neurological causes. (ECF #236, Ex. A, at 19-25). Further, the physician believed that gabapentin was not an appropriate method for treating Mr. Carson's pain due to his "past history of opioid abuse, poor pain tolerance, and manipulative behavior." (*Id.*) The BOP physician treated him with ibuprofen, and when Mr. Carson continued to complain of pain, tried him on a prescription of diclofenac. Throughout this time, Mr. Carson failed to abide by the medical recommendation to "avoid heavy lifting and high impact activities." (*Id.* at 13-18). Instead he maintained a daily three-hour workout routine, which also calls into question the severity of his alleged pain.

After a period of time, the BOP physician discontinued the diclofenac and opted to indefinitely postpone any further steroid treatments because he was "concerned with [Mr. Carson's] goals on treatment," and worried that "more pain relief will likely result in the

acceleration of disc degeneration." The physician was concerned that by masking the pain, Mr. Carson was able to continue his strenuous daily regimen which could accelerate disc damage and lead to a degeneration in his health. (*Id.* at 10). He did, however, then provide Mr. Carson with the maximum dosage of ibuprofen to curb his reported pain. Therefore, the BOP's alleged failure to provide additional pain medication did not cause a risk of serious deterioration in his health, rather, it was meant to curb that very risk.

Mr. Carson also claims that the BOP failed to provide him with necessary dental care and, as a result, he has had to have several teeth extracted. He further claims that the extractions have caused other complications, including deterioration of his remaining teeth, chipped and missing fillings, and difficulty eating. He claims that without proper dental care he faces the risk of a serious deterioration of his health, including increased risk for Alzheimer's and heart disease. Again, Mr. Carson's medical records show that the BOP has provided him with on-going dental care. When Mr. Carson presented with dental complaints, the BOP recommended removal of several infected teeth. Mr. Carson initially refused this treatment. Eventually as his symptoms failed to resolve, he agreed to the extractions, which were performed by the BOP. (ECF #223-5, Appx. A, Page ID 2174-2175). The dental office of the BOP encouraged Mr. Carson to request a sick call appointment to return if he continued to experience any pain. (*Id.*). Providing tooth extractions to remove decayed teeth is providing competent and responsive dental care, and is not evidence of any extraordinary and compelling reason for a sentence reduction even after the November 2023 revisions to the Sentencing Commissions policy guidelines. *See, e.g., United States v. Calton*, 2024 WL 1087904, at *2-3 (N.D. Ohio, Mar. 13, 2024); *United States v. DeJournett*, 2024 WL 1580102, at *5 (N.D. Ohio, Apr. 11 2024).

None of the other circumstances or conditions described by Mr. Carson rise to the level of extraordinary and compelling circumstances, either alone or in combination. He is being evaluated to determine whether medication assisted treatment is an appropriate method for

addressing his opioid use disorder. (ECF #236, Ex. B at 4-5). A fear of contracting COVID in the future, the conditions imposed to prevent the spread of COVID in 2020-2021, and the mere possibility that his back pain could, in part, be caused by long-Covid are not sufficiently serious conditions to satisfy the criteria for extraordinary and compelling circumstances that would warrant a sentence reduction. Further, rehabilitation is not an extraordinary and compelling reason for relief.

Even if Mr. Carson had presented extraordinary and compelling reasons to consider relief, the Court would have to balance all of the §3553 sentencing factors, including but not limited to, the nature and circumstances of the offense, the history and character of the defendant, the need for the sentence originally imposed, the protection of the community, the avoidance of unwarranted sentencing disparities, and all of the other considerations that went into the original sentencing decision. It would also have to find that he is no longer a danger to the safety of any other person or to the community. A fair balancing of the 18 U.S.C. §3553(a) factors, leads to the conclusion that under this unique set of circumstances, a reduction in sentence would not be appropriate, and that Mr. Carson remains a danger to the community.

The Court weighed the §3553(a) factors at his sentencing, carefully considering the nature of his crime and his extensive criminal history. Nothing has changed since his conviction and sentencing that would alter the balance of those factors. Mr. Carson robbed a bank and then tampered with a witness. He threatened the bank teller during the robbery, and tried to intimidate a witness into changing their testimony or pleading "the 5th Amendment." (ECF # 104, PageID 1424, 1427). These are serious crimes. Mr. Carson also has a lengthy criminal history, earning him the status of "career offender," and indicating that he has not been subject to effective rehabilitation when convicted of other crimes. He has a history of violating parole and serial recidivism that demonstrates he has no willingness to conform his behavior to the law. Further, a

reduction in sentence would create an unwarranted disparity in his sentence when compared to the sentences of other defendants who committed similar crimes.

For purposes of this opinion, the Court considered Mr. Carson's filings, as well as the record from his arraignment through the original sentencing. In addition it balanced all the factors set forth in 18 U.S.C. §3553(a). The circumstances of Mr. Carson's case do not support a sentence reduction in this case. For the reasons set forth above, the Court finds under the totality of the circumstances that there are no extraordinary and compelling reasons to reduce Mr. Carson's sentence, and that the §3553(a) factors would not support any such reduction. The Defendant's Motion for Compassionate Release are DENIED. (ECF#223, 226). IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATE: June 11, 2024